IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VERIZON CALIFORNIA INC.,

    Plaintiff,

   v.

MICHAEL R. PEEVEY, et al.,

    Defendants.

NO. C03-2838 TEH

ORDER GRANTING IN PART
AND DENYING IN PART
PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY
ADJUDICATION

Plaintiff Verizon California Inc. ("Verizon") challenges the interim rates for unbundled network elements established by the California Public Utilities Commission ("CPUC") on March 13, 2003, and subsequently modified on January 27, 2005. On January 13, 2004, this Court denied in part Verizon's motion for summary adjudication of its first, second, and fourth causes of action after determining that Verizon's claims were not ripe for judicial review under *U.S. West Communications v. MFS Intelenet, Inc.*, 193 F.3d 1112 (9th Cir. 1999). The Court subsequently dismissed the case, and Verizon timely appealed the Court's ripeness ruling. In an opinion filed on July 6, 2005, the Ninth Circuit distinguished *MFS Intelenet* and vacated this Court's judgment against Verizon. *Verizon California Inc. v. Peevey*, 413 F.3d 1069 (9th Cir. 2005). The Ninth Circuit remanded the case "with instructions that the district court consider on the merits whether Verizon is entitled to the declaratory and injunctive relief" it seeks. *Id.* at 1072.

Following the Ninth Circuit's remand to this Court, Verizon renewed its motion for summary adjudication of its first, second, and fourth causes of action. The Court heard oral argument on Verizon's motion on Monday, November 14, 2005. After carefully considering the parties' written and oral arguments, the record in this case, and governing law, the Court now GRANTS IN PART and DENIES IN PART Verizon's motion for the reasons discussed below.

United States District Court

For the Northern District of California

**BACKGROUND**

The Telecommunications Act of 1996 ("the Act"), 47 U.S.C. §§ 151 *et seq.*, "is designed to foster competition in local and long distance telephone markets." *MFS Intelenet*, 193 F.3d at 1116.  To facilitate that goal, the Act requires incumbent local exchange carriers ("ILECs"), such as Verizon in this case, to permit entrants to the market to use parts of its network, called unbundled network elements ("UNEs").  47 U.S.C. § 251(c)(3).

Under § 252 of the Act, if an entrant and the ILEC cannot agree on the terms of access to the UNEs, either party can petition the state utilities commission to conduct an arbitration to set rates in accordance with the Act.  47 U.S.C. § 252(b)(1).  The state commission must comply with "the Act's provisions governing how the rates must be set and by the FCC's [Federal Communications Commission's] related regulations, 47 U.S.C. § 252(c)(1)-(2), including regulations that require state utilities commissions to use the total element long run incremental cost ('TELRIC') methodology.  47 C.F.R. § 51.505." *Peevey*, 413 F.3d at 1071 (citations omitted).  The Act grants federal district courts jurisdiction to review a state commission's rate determinations.  47 U.S.C. § 252(e)(6).

The parties in this case agree that the rates at issue were established as part of a so-called "generic proceeding," rather than a § 252 arbitration between Verizon and specific carriers seeking entrance into the market.  However, Defendants do not contest the Court's jurisdiction to resolve this dispute.  In addition, when reviewing this case on appeal, the Ninth Circuit squarely held that federal law required the CPUC to set UNE rates in compliance with TELRIC.  Specifically, the court held that UNE rates must comply with TELRIC when adopted, and no exception exists for rates that a state commission designates as nominally interim rather than permanent.  *Id.* at 1071, 1073.

The CPUC first adopted UNE rates for Verizon in 1997.  CPUC Decision 03-03-033, 2003 Cal. PUC LEXIS 168, J.A. Ex. 30, at APP 1026 [hereinafter "Interim Rate Order"] (noting that UNE rates were set by CPUC Decision 97-01-022).  Although these rates were intended to be interim, they remained in place from 1997 until 2003.  *Id.*  Following a petition to revise UNE rates filed by a prospective entrant to the market, the CPUC revisited

Verizon's UNE rates beginning in early 2002.  *Id.* at APP 1027.  As part of that process, the administrative law judge ("ALJ") overseeing the case set an expedited proceeding to establish revised interim and permanent UNE rates.  July 23, 2002 ALJ Ruling, J.A. Ex. 10. Over the next few months, Verizon submitted several rounds of pricing proposals and comments to the CPUC, as did several entrants to the market, including AT&T Communications of California, Inc., and WorldCom, Inc.  Interim Rate Order at APP 1027.

Of relevance to Verizon's due process claim, the ALJ originally rejected the suggestion made by several entrants that the CPUC base interim rates on the rates adopted for Verizon carriers in other states.  June 28, 2002 ALJ Hearing Tr., J.A. Ex. 9, at APP 168-69.  After reviewing proposals submitted by Verizon and others, as well as the objections to these proposals, the ALJ reversed course and solicited new proposals based on other states' rates.  Aug. 23, 2002 ALJ Ruling, J.A. Ex. 15, at APP 585-86.  The parties to the rate-setting proceedings were given approximately two weeks to submit such proposals and eleven days in which to object to each other's proposals.[1]  *Id.*

After the ALJ issued a draft decision, and Verizon and prospective entrants to the market filed objections to that decision and reply comments to each other's objections, the CPUC issued its final order setting interim UNE rates for Verizon on March 13, 2003. Interim Rate Order, J.A. Ex. 30.  These rates were based on modifications, using the FCC's Synthesis Model, to rates adopted for Verizon New Jersey, and the CPUC ordered that the interim rates "shall be adjusted, either up or down, once final rates are set" – i.e., subject to a "true-up."  *Id.* at APP 1036-40.  On August 21, 2003, the CPUC issued an order denying Verizon's application for rehearing of the interim rate order.  CPUC Decision 03-08-074, 1993 Cal. PUC LEXIS 923, J.A. Ex. 33 [hereinafter "Order Denying Rehearing"].

---

[1]The ALJ's ruling ordered objections to be filed within eight days; new proposals were due on September 9, 2002, and objections were due on September 17, 2002.  However, the deadline for filing objections was apparently extended, as Verizon and others filed their objections on September 20, and there is no evidence that the ALJ construed these objections as untimely.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    While this case was on appeal to the Ninth Circuit, the CPUC granted Verizon's

2  petition to modify the interim rates based on the New Jersey Board of Public Utilities'

3  subsequent decision to increase Verizon New Jersey's rates.  On January 27, 2005, the CPUC

4  explained that:

5            In adopting interim UNE rates, the Commission relied on UNE
             rates recently adopted for Verizon in New Jersey, and then
6            adjusted these rates based on the Federal Communications
             Commission's (FCC) Synthesis Model to compare relative costs
7            between Verizon's operations in California and New Jersey.
             (D.03-03-033, p. 33.)  This decision grants a petition for
8            modification of D.03-03-033 and adjusts the interim rates to
             reflect recent increases in Verizon New Jersey UNE rates.  In
9            addition, this decision removes the 22% shared and common cost,
             or "overhead," markup initially added to the interim rates and
10           relies instead on the overhead markup incorporated into New
             Jersey rates.
11

12  CPUC Decision 05-01-057, Ex. A to Hunt Decl., at 1-2.  The reduction in the overhead

13  markup resulted in reductions in certain rates, even though the base New Jersey rates had

14  increased.  More specifically, the CPUC's modifications resulted in a 2.3% decrease in

15  Verizon's interim 2-wire loop rates; a 1.9% decrease in Verizon's interim 4-wire loop rate;

16  and a 28.3% increase in Verizon's interim port rate.  *Id.* at 2.

17    When Verizon's motion was first before the Court in late 2003, permanent rates were

18  scheduled to be set by the CPUC no later than July 22, 2004, if no hearings were required, or

19  November 25, 2004, if evidentiary hearings were required.  Oct. 9, 2003 ALJ Ruling, J.A.

20  Ex. 34, at APP 1111.  The CPUC failed to set permanent rates by either date, however, and

21  the permanent rate proceedings remain ongoing.  At oral argument, counsel for Defendants

22  repeated the assertion from Defendants' written opposition that permanent rates will be

23  established "shortly."  Following oral argument, Defendants submitted to the Court by mail a

24  draft decision by the ALJ that sets permanent UNE rates for Verizon.  The draft decision was

25  mailed by the ALJ on November 22, 2005, and Defendants' counsel represents that the

26  matter may be placed on the CPUC's agenda for consideration by the full CPUC after a

27  thirty-day comment period expires.

28

4

**United States District Court**
For the Northern District of California

1    In this action, Verizon challenges the interim UNE rates on five grounds: (1) that

2    Defendants acted arbitrarily and capriciously when setting interim rates, and that the interim

3    rates were not based on substantial evidence; (2) that Defendants failed to comply with the

4    Act and TELRIC when setting interim rates; (3) that the interim rates were an

5    unconstitutional taking without just compensation; (4) that the procedure by which the

6    interim rates were set violated Verizon's due process rights; and (5) that Defendants violated

7    42 U.S.C. § 1983 when setting interim rates by violating federal law while acting under color

8    of state law.  Verizon now seeks summary adjudication on claims one, two, and four and asks

9    that the Court vacate the Interim Rate Order and its modifications, reinstate the UNE rates

10   adopted for Verizon in 1997, and remand this matter to the CPUC to set lawful UNE rates for

11   Verizon.  In the words of the Ninth Circuit, "Verizon has presented a straightforward

12   challenge to the basis on which the CPUC set the current rates; namely the rates set in New

13   Jersey, with alleged inadequate adjustment for Verizon's costs in California.  Whether this

14   short cut complied with federal law and the constitution is ripe for adjudication." *Peevey*,

15   413 F.3d at 1073.

16

17   **LEGAL STANDARD**

18       Summary judgment is appropriate when there is no genuine dispute as to material

19   facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

20   Material facts are those that may affect the outcome of the case.  *Anderson v. Liberty Lobby,*

21   *Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is

22   sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*  The

23   court may not weigh the evidence and must view the evidence in the light most favorable to

24   the nonmoving party.  *Id.* at 255.

25       In this case, the parties have submitted a joint appendix of excerpts of the

26   administrative record, and no party suggests that any factual disputes exist.  Instead, the

27   parties appear to concede, and this Court agrees, that the disputes between the parties are all

28   questions of law rather than fact.

5

**DISCUSSION**

**I.     TELRIC Claim**

Verizon first seeks summary adjudication of its claim that the interim UNE rates at issue violated federal law.  The Act requires a state commission to set UNE prices that are "just, reasonable, and nondiscriminatory," 47 U.S.C. § 251(c)(3), and to base such prices "on the cost . . . of providing the interconnection or network element," 47 U.S.C. § 252(d)(1)(A)(i).  In setting UNE prices, the commission must use a forward-looking, cost-based methodology known as TELRIC (Total Element Long Run Incremental Cost).  The TELRIC of a network element is the "forward-looking cost over the long run of the total quantity of the facilities and functions that are directly attributable to, or reasonably identifiable as incremental to, such element, calculated taking as a given the incumbent LEC's [local exchange carrier's] provision of other elements."  47 C.F.R. § 51.505(b).  TELRIC does not require looking at historical costs – i.e., the costs incurred by the ILEC in putting an element into place.  Instead, the TELRIC cost of an element "should be measured based on the use of the most efficient telecommunications technology currently available and the lowest cost network configuration, given the existing location of the incumbent LEC's wire centers."  47 C.F.R. § 51.505(b)(1).  TELRIC rates must also be based on the forward-looking cost of capital and on economic depreciation rates.  47 C.F.R. § 51.505(b)(2)-(3).

The parties dispute whether this Court should review Verizon's TELRIC claim de novo or under an arbitrary and capricious standard.  A district court reviews de novo whether a rate order complies with the Telecommunications Act and its implementing regulations, but it reviews all other issues under an arbitrary and capricious standard.  *MFS Intelenet*, 193 F.3d at 1117.  Defendants argue that Verizon challenges the CPUC's factual findings and that the arbitrary and capricious standard therefore applies, but this argument is not persuasive.  Although Verizon does raise an arbitrary and capricious challenge (discussed in the next section of this order), it also claims that the procedure used by the CPUC in setting interim rates – i.e., starting with rates for Verizon New Jersey and adjusting those rates using

6

1    the Synthesis Model – violated the Act by failing to comply with TELRIC.  This is an issue

2    that, under well-established precedent, the Court reviews de novo.

3         Verizon asserts that Defendants violated the Act when they relied on the work product

4    of the New Jersey Board of Public Utilities and set rates for Verizon based on Verizon New

5    Jersey's rates, as adjusted by applying the Synthesis Model.  The FCC has made conflicting

6    statements regarding whether one state's commission may rely on the rates set by another

7    state's commission without independently verifying the validity of those rates.  On the one

8    hand, the FCC has explained that the Act "contemplates states *independently* setting rates

9    based on federally established guidelines," and has emphasized "the importance of *state-*

10   *specific, independent* analysis of rates for UNEs."  *In the Matter of Joint Application by*

11   *BellSouth Corp., et al., for Provision of In-Region, InterLATA Servs. in Ga. & La.*, 17

12   F.C.C.R. 9018 ¶ 24 (May 15, 2002) (emphases added).  On the other hand, the FCC has also

13   encouraged states "with limited resources" to rely on the work product of other states when

14   setting rates and has gone so far as to say that, "in the appropriate circumstances . . . a state

15   would be entitled to a presumption of compliance with TELRIC" if it wholly imported the

16   rates of another state without any adjustments and "could demonstrate that its costs were at

17   or above the costs in that state whose rates it adopted."  *In the Matter of Joint Application by*

18   *SBC Commc'ns Inc., et al., for Provision of In-Region, InterLATA Servs. in Kan. & Okla.*,16

19   F.C.C.R. 6237 ¶ 82 & n.244 (Jan. 22, 2001) [hereinafter "*Kan./Okla. Order*"].

20        Defendants attempt to rely on the FCC's comments in the Kansas/Oklahoma order,

21   but they fail to meet the conditions described by the FCC in that order.  First, Defendants

22   have made no showing, nor even any argument, that California is a state "with limited

23   resources."  *Id.* at n.244.  Nor is there any evidence in the record of any comparisons between

24   California and New Jersey costs; thus, Defendants have failed to "demonstrate that its costs

25   were at or above the costs in [New Jersey]."  *Id.*  Finally, Defendants have not demonstrated

26   that the "appropriate circumstances" contemplated by the FCC have been met here;

27   California and New Jersey are far from "adjoining states," and Defendants have made no

28   showing that California and New Jersey "have a similar, if not identical, rate structure."  *Id.*

7

¶ 82 & n.244.  Indeed, as Verizon observes, the CPUC noted in its interim rate order that New Jersey and California have different switching rate structures.  Interim Rate Order at APP 1040.  In light of all of the above, Defendants have not demonstrated that the FCC's commentary in the Kansas/Oklahoma order applies to this case.

Defendants nonetheless argue that their use of the New Jersey rates in this case was proper because the CPUC adjusted the New Jersey rates using the Synthesis Model.  Verizon disputes whether the Synthesis Model can be used at all in rate-setting proceedings and contends that the FCC has only approved use of the model for benchmarking in another type of proceeding.[2]  However, the FCC has explicitly rejected Verizon's argument, explaining that "Verizon's allegation that the Commission has stated that the SM [Synthesis Model] should not be used to generate UNE rates goes too far."  *In the Matter of Petition of WorldCom, Inc. Pursuant to § 252(e)(5) of the Commc'ns Act for Preemption of the Jurisdiction of the Va. State Corp. Comm'n Re: Interconnection Disputes with Verizon Virginia Inc. & for Expedited Arbitration*, 18 F.C.C.R. 17,722 ¶ 51 (Aug. 29, 2003) (footnote omitted) [hereinafter "*Va. Order*"].  The FCC "cautioned parties against using the nationwide input values, which the Commission adopted for universal service cost comparison purposes, in developing UNE rates," but it "did not state that the model platform would be inappropriate for use in setting UNE rates."  *Id.* (footnotes omitted).  Thus, the FCC allows use of the Synthesis Model platform provided that it is updated with state-specific inputs:

> When the Commission adopted nationwide inputs in the universal service proceeding, it expressly cautioned that the use of state-specific data may be more appropriate for use in determining UNE rates.  The purpose of this proceeding is to set UNE prices based on the forward-looking cost of providing those

---

[2]When determining whether a carrier should be allowed to provide long-distance services (in what are called "Section 271 proceedings"), the FCC considers whether the state has established TELRIC-compliant UNE rates.  47 U.S.C. § 271(c)(2)(B)(ii).  If the FCC finds that the state violated TELRIC when setting UNE rates, then the FCC benchmarks the state's UNE rates against those of other states to see whether the error resulted in rates that are out of the range of TELRIC-compliant rates.  *Kan./Okla. Order*, 16 F.C.C.R. 6237 at ¶ 81.  The FCC has used the Synthesis Model for this benchmarking purpose.  *In the Matter of Application by Verizon New Jersey Inc., et al., for Authorization to Provide In-Region, InterLATA Servs. in New Jersey*, 17 F.C.C.R. 12,275 ¶ 51 (June 24, 2002) [hereinafter "*Verizon New Jersey § 271 Order*"].

1

2

UNEs, thus Virginia-specific data are better suited to this purpose.

3    *Id.* ¶ 189 (footnote omitted).

4          Defendants conceded at oral argument that, unlike the use of the Synthesis Model in

5    the Virginia case, the CPUC's application of the Synthesis Model in this case used only the

6    nationwide inputs and did not adjust any inputs to be California-specific.  Verizon does not

7    dispute that the Synthesis Model adjusts relative switching costs based on major cost drivers

8    and the number of host and remote switches, and that the model also takes into account

9    population densities, which drive equipment sizing for loops.  *In the Matter of Application of*

10   *Verizon New England Inc., et al., for Authorization to Provide In-Region, InterLATA Servs.*

11   *in Mass.*, 16 F.C.C.R. 8988 ¶ 23 (Apr. 16, 2001); *In the Matter of Fed.-State Joint Bd. on*

12   *Universal Serv.*, 14 F.C.C.R. 20,156 ¶¶ 84, 87 (Nov. 2, 1999).  However, Verizon asserts that

13   the Synthesis Model uses nationwide inputs for cost of capital, depreciation, and fill factor,

14   which one court has explained are the "three major inputs" to determine UNE costs.  *Mpower*

15   *Commc'ns Corp. v. Hurley*, 381 F. Supp. 2d 738, 745 (N.D. Ill. 2005).  Defendants do not

16   rebut that these are major inputs for determining UNE costs or that the Synthesis Model

17   reflects only nationwide values for these inputs.  Instead, Defendants argue that state

18   commissions must calculate inputs based on use of a hypothetical network and not based on

19   actual costs.

20         While this argument is correct to a certain extent, TELRIC does not dictate

21   consideration of a purely hypothetical network, nor do Defendants present any authority for

22   the proposition that costs of the "most efficient telecommunications technology currently

23   available and the lowest cost network configuration" contemplated by the regulations can be

24   considered on a nationwide, rather than state-specific, basis.  47 C.F.R. § 51.505(b)(1).  For

25   example, the regulations specifically require that "the existing location of the incumbent

26   LEC's wire centers" be considered when calculating costs.  *Id.*  In addition, the FCC has

27   explained that fill factors are "state-specific" and must be based in part on "a reasonable

28   projection of the actual total usage of the element."  *Verizon New Jersey § 271 Order*, 17

9

F.C.C.R. 12,275 ¶ 31; *In the Matter of Implementation of the Local Competition Provisions in the Telecomms. Act of 1996*, 11 F.C.C.R. 15,499 ¶ 682 (Aug. 8, 1996).  Defendants have also offered no evidence or argument that the forward-looking cost of capital does not vary on a state-by-state basis.  *See* 47 C.F.R. § 51.505(b)(2) (requiring TELRIC to consider the forward-looking cost of capital).  To the contrary, the FCC has specifically stated that "UNE rates are set by state commissions based on *state-specific* costs and demand."  *Verizon New Jersey § 271 Order*, 17 F.C.C.R. 12,275 ¶ 53 (emphasis added); *see also Va. Order* ¶ 273 (emphasizing whether a proposal took into account state-specific conditions as a factor to consider when deciding which of two competing proposals to adopt).  Thus, Defendants' suggestion that TELRIC costs may be based on a hypothetical network with generic nationwide inputs is not persuasive.  Because Defendants admittedly used the generic nationwide inputs when it applied the Synthesis Model, Defendants' use of the Synthesis Model to set UNE rates violated federal law.

Defendants also assert several other justifications for their use of the Synthesis Model as applied to New Jersey rates in this case, but none of these is persuasive.  First, Defendants' designation of the rates as interim does not excuse any TELRIC error.  As the Ninth Circuit clearly held in its opinion remanding this case, all UNE rates, when adopted, must comply with TELRIC.  *Peevey*, 413 F.3d at 1073.  Second, Defendants cannot rely on the "best information available" standard under § 252(b)(4)(B) of the Act because the rates at issue were not set under the authority of § 252(b), which covers agreements arrived at through compulsory arbitration, rather than the generic proceedings at issue here.  As a result, the CPUC was not under the time pressure imposed by the nine-month deadline established by § 252(b)(4)(C).  Moreover, even if § 252(b)(4)(B) did apply to the interim rate proceedings, Defendants have not demonstrated that the prerequisite to applying the "best information available" standard – i.e., that "any party [has] refuse[d] or fail[ed] unreasonably to respond on a timely basis to any reasonable request from the State commission" – has been met here.  Although the CPUC found flaws with the rate proposal submitted by Verizon, there is no evidence that Verizon failed to respond to any request for information from the

United States District Court
For the Northern District of California

10

United States District Court

For the Northern District of California

1    CPUC.  Next, Defendants assert that their use of the Synthesis Model was adequate because

2    the CPUC only adjusted the New Jersey rates upwards and did not lower rates which the

3    Synthesis Model indicated should be adjusted downwards.  However, the CPUC's use of the

4    Synthesis Model, as discussed above, violated TELRIC because it did not consider

5    California-specific costs, and the CPUC's one-sided adjustments cannot cure that violation.[3]

6         Accordingly, for all of the above reasons, the Court GRANTS summary adjudication

7    to Verizon on its second claim for relief, which asserts that the interim rates violated federal

8    law.  In reaching this conclusion, the Court need not and does not decide whether a state

9    commission must, when considering rates adopted by another state commission,

10   independently analyze whether those rates are TELRIC-compliant for the other state.  Even if

11   the rates adopted for Verizon New Jersey were TELRIC-compliant for New Jersey, the

12   CPUC's use of those rates in this case was not TELRIC-compliant because the CPUC failed

13   to take into account California costs.

14

15   **II.      Arbitrary and Capricious Claim**

16        Verizon also seeks summary adjudication of its claim that the CPUC acted arbitrarily

17   and capriciously when setting the interim rates at issue.  Defendants do not dispute that the

18   interim rate order, as well as the revised interim rate order, adopted the cost of capital and

19   method for calculating depreciation used by the New Jersey Board in setting rates for

20   Verizon New Jersey.  Defendants also do not dispute that these figures differ from those that

21   the CPUC found to be appropriate for California in 1996.  Verizon argues that the CPUC

22   acted arbitrarily and capriciously when it adopted the New Jersey cost of capital and method

23   for calculating depreciation because it departed from its earlier policies without explanation.

24   *See W. States Petroleum Ass'n v. Envtl. Prot. Agency*, 87 F.3d 280, 284 (9th Cir. 1996)

25   _____

26   [3]In fact, if anything, the one-sided adjustments violated TELRIC even more than full
     adoption of the Synthesis Model results would have done.  Defendants argue that California

27   costs were taken into account because the CPUC applied the Synthesis Model to Verizon
     New Jersey's rates.  Ignoring the results of the Synthesis Model and adopting Verizon New

28   Jersey's rates without modification for certain elements therefore implies that, as to those
     elements, the CPUC has no basis for claiming that it considered any California-specific costs.

11

(holding that an agency "may not depart, sub silentio, from its usual rules of decision to reach a different, unexplained result in a single case").  Under an arbitrary and capricious standard, a court will set aside an agency's decision only if the moving party demonstrates that the decision is not supported by substantial evidence or that the agency made a "clear error in judgment."  *Pac. Bell v. Pac-West Telecomm, Inc.*, 325 F.3d 1114, 1131 (9th Cir. 2003) (citations omitted).

The CPUC acknowledged a concern with "methodological differences such as differing depreciation assumptions" between New Jersey and California.  Interim Rate Order at APP 1039.  Nonetheless, the CPUC opted to use the adjusted New Jersey rates because: (1) the interim rates would be subject to adjustment once final rates were set; (2) the Synthesis Model adjustments accounted for cost differences between New Jersey and California; (3) Verizon's current rates were not a legitimate starting point for calculating interim rates; and (4) the commission could "no longer justify rates for Verizon based on a 1996-era TSLRIC cost study."[4]  *Id.*  In its order denying Verizon's request for rehearing, the CPUC reiterated that the differences between California and New Jersey cost of capital rates and depreciation were not "of concern, since the depreciation and cost of capital rates will be reconsidered and may be adjusted when permanent UNE rates are established."  Order Denying Rehearing at APP 1103.

However, as discussed above, designating rates as interim and subject to a true-up does not justify departing from TELRIC principles, which require that state-specific costs be considered.  Moreover, there is no evidence in the record that the New Jersey cost of capital and method of depreciation are appropriate for California, and Defendants do not even argue that this is the case.  The Court therefore finds that the CPUC's decision to import the New Jersey cost of capital and method for calculating depreciation is not supported by substantial evidence.  In addition, the CPUC made a clear error in judgment because its rationale for allowing the use of a different cost of capital and depreciation method – i.e., that the rates

---

[4]TSLRIC (Total Service Long Run Incremental Cost) was the methodology used to set rates before TELRIC was adopted.

United States District Court
For the Northern District of California

1   were interim – was contrary to federal law.  Accordingly, the Court concludes that

2   Defendants acted arbitrarily and capriciously, and Verizon is therefore entitled to summary

3   adjudication on its first claim for relief.

4

5   **III.    Due Process Claim**

6           Verizon next seeks summary adjudication of its due process claim.  Defendants do not

7   dispute that Verizon had a property interest in the UNE rates that is protected by the

8   constitutional right to due process or that, as a result, Verizon was entitled to notice and an

9   opportunity to be heard and the right to a decision by "a reasonable decisionmaker who

10  would not act arbitrarily or capriciously and who would base the decision upon the evidence

11  presented." *Jordan v. City of Lake Oswego*, 734 F.2d 1374, 1376 (9th Cir. 1984) (discussing

12  due process requirements); *MCI Telecomms. Corp. v. BellSouth Telecomms., Inc.*, 9 F. Supp.

13  2d 766, 772 (E.D. Ky. 1998) (holding that a company entitled to "the proper setting of

14  telecommunication rates . . . has a property interest in such rates" and is therefore entitled to

15  due process).  Because due process includes a right to a decisionmaker who does not act

16  arbitrarily or capriciously, and because the Court has already found that Defendants acted

17  arbitrarily and capriciously when setting interim rates, Verizon's due process rights were

18  therefore violated.

19          Verizon also contends that its due process rights were violated because it was denied a

20  meaningful opportunity to be heard.  Verizon contends that the eleven-day period for

21  responses to the New Jersey proposal was insufficient, especially when combined with the

22  fact that the proposal to base interim rates on New Jersey rates was not accompanied by the

23  underlying cost studies relied on by the New Jersey Board.

24          Defendants attempt to defeat Verizon's due process claim by arguing that Verizon had

25  four rounds in which to comment on interim pricing proposals and that Verizon thus had

26  ample opportunity to be heard on the question of how interim rates should be set.  However,

27  this argument completely ignores the contours of Verizon's claim.  Verizon does not claim

28  that it lacked an opportunity to be heard generally; instead, it specifically argues that it did

United States District Court

For the Northern District of California

13

1   not have a meaningful opportunity to be heard on the specific question of whether New

2   Jersey rates should be used as a basis for setting interim rates in California.

3          On that point, Verizon has failed to persuade the Court that its argument has merit.

4   Verizon clearly had an opportunity to be heard, and, while eleven days is admittedly a short

5   time to prepare a response, Verizon cites no authority as to why this period was

6   constitutionally inadequate or was so short as to deprive Verizon of the ability to prepare a

7   meaningful response.  Verizon claims that its later submission of criticisms to the New Jersey

8   proposal – submitted in response to the ALJ's draft decision and rejected by the CPUC as

9   untimely – underscores the deprivation of due process by the eleven-day deadline, but there

10  is no evidence that Verizon could not have come up with the same criticisms in a timely

11  manner had it devoted more resources to the task.  Nor is there any evidence that Verizon

12  could not have devoted additional resources to evaluating the New Jersey proposal during the

13  eleven-day period, or that Verizon asked for but was denied an additional extension of time

14  in which to respond to the proposal.  Beyond that, the fact that Verizon was able to critique

15  the proposal at a later date, when it had been given no additional information, undermines

16  Verizon's argument that the lack of underlying cost studies precluded a meaningful

17  opportunity to respond.

18         Consequently, the Court GRANTS IN PART and DENIES IN PART Verizon's

19  motion for summary adjudication on its fourth claim for relief for violation of due process.

20  The motion is GRANTED to the extent that due process entitles Verizon to a decisionmaker

21  who will not act arbitrarily or capriciously.  However, the motion is DENIED to the extent

22  that Verizon claims it was denied a meaningful opportunity to be heard.

23

24  **IV.    Remedy**

25         Finally, the parties dispute what remedy the Court should order if, as the Court has

26  found, Verizon is entitled to summary adjudication on one or more of its claims.  Verizon

27  asks that the Court vacate the interim rate order and immediately reinstate the last valid rates

28  set by the CPUC, which are the interim rates set in 1997.  Defendants request that the Court

**United States District Court**
For the Northern District of California

14

1  remand the matter to the CPUC to calculate appropriate rate adjustments in the true-up phase

2  of the rate-setting proceedings.

3      Defendants' position is not persuasive, and Verizon correctly points out that granting

4  Defendants' request would essentially eviscerate the Ninth Circuit's holding that interim

5  rates are reviewable for TELRIC compliance even when subject to a later true-up.  The

6  CPUC will calculate appropriate rate adjustments once permanent rates are set regardless of

7  the Court's ruling in this case, and the Court agrees with Verizon that Defendants' proposed

8  remedy would, in reality, be no remedy at all.

9      The question before the Court is whether the interim rates, which the Court has found

10 to be non-TELRIC-compliant, should be allowed to remain effective pending the setting of

11 permanent rates.  The Court concludes that they should not.  The Ninth Circuit made clear in

12 its opinion remanding this case that UNE rates must comply with TELRIC when adopted,

13 and "[n]o provision is made by [the Act] for any rate to be established in a different way."

14 *Peevey*, 413 F.3d at 1073.  Because the CPUC failed to comply with TELRIC when setting

15 interim rates in this case, the CPUC had no authority to promulgate those rates.

16     Although the 1997 rates were set prior to the adoption of the TELRIC methodology,

17 and such rates are based on old cost studies that may no longer be forward-looking and

18 therefore may not be TELRIC-compliant, Verizon's request to reinstate those rates pending

19 the setting of permanent rates must be granted.  The 1997 rates were the last rates set by the

20 CPUC acting with valid authority, and the Court cannot allow rates that were adopted in

21 violation of federal law to stand; notably, Defendants cite no precedent to the contrary.  In

22 vacating the non-TELRIC-compliant rates and reinstating the 1997 rates, this Court follows

23 the lead of the Seventh Circuit, which upheld a district court's injunction reinstating

24 admittedly outdated rates and noting that the state commission "must [set TELRIC-compliant

25 rates] speedily.  A rate that is long out of date, as this 1997 rate is, frustrates the goals of

26 TELRIC every bit as much as does a rate generated under the flawed state legislation.  SBC

27 and its rivals alike are entitled to an updated rate that comports with federal law." *AT&T*

28 *Commc'ns of Ill., Inc. v. Ill. Bell Tel. Co.*, 349 F.3d 402, 411 (7th Cir. 2003).

**CONCLUSION**

Accordingly, with good cause appearing for the reasons discussed above, IT IS HEREBY ORDERED that:

1. Verizon's motion for partial summary adjudication is GRANTED IN PART and DENIED IN PART.  The motion is GRANTED as to Verizon's first claim that Defendants acted arbitrarily and capriciously; Verizon's second claim that the interim UNE rates did not comply with federal law; and Verizon's fourth claim for violation of due process, to the extent that Verizon claims its due process was violated by a decisionmaker who acted arbitrarily or capriciously.  The motion is DENIED as to Verizon's due process claim to the extent that Verizon claims it was denied a meaningful opportunity to be heard.

2. The interim UNE rates established for Verizon by the CPUC in Decision 03-03-033 and modified in Decision 05-01-057 are vacated.

3. The UNE rates adopted in Decision 97-01-022 are reinstated but shall be subject to true-up once permanent UNE rates are established.

It appears from Defendants' post-hearing submission to the Court that the CPUC may set permanent UNE rates for Verizon as early as thirty days from the date of the November 22, 2005 draft ALJ decision.  While Verizon suggested at oral argument that it would be difficult for the Court to order permanent rates to be established by a particular date, the Court nonetheless strongly encourages Defendants to act expeditiously in setting permanent rates – while, of course, preserving the due process rights of Verizon and other commenters.  The 2003 rates vacated by this order, and even the 1997 rates reinstated by this order, were intended to be interim, yet the CPUC has failed, by nearly the end of 2005, to set permanent rates.  The Court understands that rate-making proceedings take time, but it is difficult to consider rates in effect for so long as "interim" in anything but name only.  The Court hopes that Defendants' promise to set permanent rates "shortly" finally holds true, and that the 1997 rates reinstated by this order will truly be interim in every sense of the word.

Finally, the parties' November 7, 2005 joint case management statement indicates that the parties may agree that this order resolves this case in its entirety.  If the parties do so

United States District Court
For the Northern District of California

16

agree, then they shall meet and confer, and Verizon shall file a proposed judgment, approved as to form by Defendants, on or before **Thursday, December 15, 2005.** Alternatively, if the parties believe that further litigation is necessary, then the parties shall meet and confer and file a joint case management statement on or before **Monday, January 23, 2006,** and appear for a further case management conference on **Monday, January 30, 2006, at 1:30 PM.**

**IT IS SO ORDERED.**

Dated:   12/05/05

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

United States District Court
For the Northern District of California

17