United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| VERIZON CALIFORNIA INC., <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL R. PEEVEY, et al., <br><br> Defendants. | NO. C03-2838 TEH <br><br> ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION OF DECEMBER 5, 2005 ORDER |

This matter came before the Court on Wednesday, May 10, 2006, on Plaintiff Verizon California Inc.'s ("Verizon's") motion for reconsideration of the Court's December 5, 2005 Order Granting in Part and Denying in Part Plaintiff's Motion for Partial Summary Adjudication. After carefully considering the parties' oral and written arguments, including those raised in the parties' supplemental briefs, and the papers filed by XO Communications Services, Inc. as *amicus curiae*, the Court now DENIES Verizon's motion for the reasons set forth below.

**BACKGROUND**

On December 5, 2005, the Court granted in part and denied in part Verizon's motion for partial summary adjudication on Verizon's first, second, and fourth causes of action. The Court found that the interim rates for unbundled network elements ("UNEs") set by the California Public Utilities Commission ("CPUC") in Decision 03-03-033 failed to comply with the Telecommunications Act of 1996 because they were not based on the required TELRIC (Total Element Long Run Incremental Cost) methodology. The Court also found that Defendants acted arbitrarily and capriciously and therefore violated Verizon's due process rights. As a remedy, the Court vacated the interim UNE rates established in Decision

03-03-033 and modified in Decision 05-01-057. Dec. 5, 2005 Order Granting in Part & Denying in Part Pl.'s Mot. for Partial Summ. Adjud. at 16. The Court further ordered that "[t]he UNE rates adopted in Decision 97-01-022 are reinstated but shall be subject to true-up once permanent UNE rates are established." *Id.*

In the parties' January 23, 2006 joint status conference statement, Verizon stated that it did not intend to pursue its remaining causes of action but that it did seek reconsideration of the Court's order that the 1997 rates be subject to true-up. After considering Verizon's request and Defendants' objections thereto, the Court orally granted Verizon leave to file a motion for reconsideration at the January 30, 2006 case management conference.

While Verizon's motion was pending but after the parties completed briefing on the motion, the CPUC issued Decision 06-03-025, which set permanent UNE rates for Verizon. In that decision, the CPUC ordered that:

> As set forth in D.03-03-033, Verizon must adjust, or "true-up" the interim rates it has charged since March 2003 for loops and switching to the new rates adopted in this order. In other words, Verizon must calculate whether its interim rates are higher or lower than today's newly adopted rates, and whether it has over or under-collected the appropriate revenues for any UNEs it sold at interim rates.
>
> . . .
>
> On December 5, 2005, the U.S. District Court vacated interim rates established by D.03-03-033 and reinstated UNE rates originally adopted for Verizon in D.97-01-022. . . . Thus, any billing adjustments must also consider the effect of this court action on UNE rates.
>
> Within 90 days of the date of this order, Verizon should calculate any billing adjustments owed to or by interconnecting carriers based on the modification of interim rates set in D.03-03-033, and revised in D.05-01-057, and the court's decision vacating interim rates. For the same reasons noted in the SBC UNE order, we will stay the effective date of any true-up until its amount can be calculated and further proceedings held to determine payment options or consider other mitigations to minimize negative financial effects of the true-up on competitive carriers. The ALJ will issue a ruling within 30 days of this order setting a prehearing conference to initiate the true-up phase of this proceeding.

CPUC Decision No. 06-03-025, 2006 Cal. PUC LEXIS 107, at *212-14 (Mar. 15, 2006) (footnote omitted). The CPUC contended in a letter to the Court that its permanent rate order

2

1 rendered Verizon's motion moot, and the Court subsequently ordered supplemental briefing
2 on the question of mootness.
3    On April 28, 2006, the Court tentatively granted the application of XO
4 Communications Services, Inc. ("XO") to file an *amicus curiae* brief and ordered that the
5 brief would be accepted for filing unless any opposition was filed by May 4, 2006. No party
6 filed such an opposition, and XO's *amicus curiae* brief shall therefore be accepted as filed.

**DISCUSSION**

**I.    Mootness**

As an initial matter, the Court agrees with Verizon that its motion is not moot. Although the CPUC did not rely on the Court's order when stating that the permanent rates in Decision 06-03-025 shall be subject to true-up, the CPUC did rely on true-up language from the 2003 decision. Thus, whether the Court's decision to vacate the 2003 interim rates means that the CPUC now lacks any authority to rely on the true-up provision from the 2003 order remains a live controversy.

**II.   Appropriateness of Reconsideration**

The CPUC argues that Verizon has not satisfied the criteria for a motion for reconsideration under Civil Local Rule 7-9, but this argument is now moot because the Court already granted Verizon leave to file such a motion. Moreover, the CPUC fails to persuade the Court that its decision was in error. While Verizon could have briefed the true-up issue in its original moving papers – and arguably should have done so when discussing the appropriate remedy if the Court granted its motion – Verizon correctly points out that neither party discussed in the original motion papers whether the 1997 rates, if reinstated, should be subject to true-up. Verizon simply sought reinstatement of the 1997 rates, with no provision that they be subject to true-up, and the CPUC argued only that the 2003 rates were valid and made no alternative argument that the Court should impose or allow a true-up if it reinstated the 1997 rates. In the absence of such an argument from the CPUC, Verizon had no reason

3

to raise the true-up issue in its reply.  Thus, the Court finds it appropriate to grant Verizon leave to argue that the Court should not have allowed the reinstated 1997 rates to be subject to true-up, notwithstanding that Verizon could have made this argument in its original summary judgment motion papers.

## III.  Merits

Turning to the merits of Verizon's motion, the parties agree that if a court invalidates the challenged portion of an administrative agency's decision, then the court cannot uphold the unchallenged portion of that decision if there is "substantial doubt that the agency would have adopted the same disposition regarding the unchallenged portion if the challenged portion were subtracted." *North Carolina v. Fed. Energy Regulatory Comm'n*, 730 F.2d 790, 796 (D.C. Cir. 1984) (citing *Fed. Power Comm'n v. Idaho Power Co.*, 344 U.S. 17, 20-21 (1952); *Addison v. Holly Hill Fruit Prods., Inc.*, 322 U.S. 607, 618-19 (1944)).  In other words, a court should set aside an administrative decision in its entirety if the challenged and unchallenged portions of the decision are so "intertwined" that severance is impossible. *Appalachian Power Co. v. Envtl. Prot. Agency*, 208 F.3d 1015, 1028 (D.C. Cir. 2000).

At oral argument, Verizon relied heavily on the court's use of the word "intertwined" in the *Appalachian Power* decision.  However, the court's opinion in *Appalachian Power* does not discuss in any detail how the challenged and unchallenged portions were intertwined, and the opinion therefore sheds little light on how to determine whether an administrative decision invalidated in part must be set aside in its entirety.  This Court reads the "intertwined" language as an alternative way of phrasing the "substantial doubt" test, rather than as a new or different standard.  Thus, the Court concludes that an administrative decision must be invalidated in its entirety if the challenged and unchallenged provisions are so intertwined that substantial doubt exists over whether the agency would have adopted the unchallenged provisions even in the absence of the challenged provisions.

The primary question in this case is therefore whether substantial doubt exists that the CPUC would have imposed a true-up in 2003 had it been aware that the interim rates it

4

1  sought to establish in 2003 were invalid. This is a close question, particularly since the
2  parties agree that no court has directly addressed the question of how much uncertainty is
3  necessary to rise to the level of "substantial doubt." At oral argument, Verizon asserted that
4  substantial doubt exists unless there is some affirmative language in the text of the agency's
5  decision indicating that the agency would have adopted the unchallenged provisions standing
6  alone, while the CPUC argued that to find substantial doubt requires near certainty that the
7  agency would not have adopted the unchallenged provisions standing alone. However, the
8  cases discussed by the parties in their papers and at oral argument do not extend that far in
9  either direction; "substantial doubt" does not mean "any doubt" or "no doubt."

10  Verizon cites several cases where courts have set aside entire agency decisions even
11  though only portions of those decisions were challenged, but those cases are distinguishable
12  from the facts here. First, in *Southwestern Bell Telephone Company v. Missouri Public*
13  *Service Commission*, the Eighth Circuit determined that price was "the overarching focus" of
14  the parties' arbitration agreement, reached after two rounds of arbitration and one round of
15  mediation, and that the pricing decisions contained in the agreement were therefore not
16  severable from the rest of the agreement. 236 F.3d 922, 924 (8th Cir. 2001), *vacated on*
17  *other grounds sub nom. AT&T Commc'ns of the Sw., Inc. v. Sw. Bell Tel. Co.*, 535 U.S. 1075
18  (2002). As the CPUC correctly observes, an arbitration agreement involves much give and
19  take between the parties, and it therefore makes sense to presume that changes in certain
20  terms, like price, might change what a party might be willing to accept on other terms; that is,
21  a more favorable price might lead a party to accept terms it would not otherwise have
22  accepted, and vice-versa. Here, by contrast, the 2003 rate order was the CPUC's decision
23  alone, and not the result of an arbitration or mediation process in which parties are expected
24  to compromise, and *Southwestern Bell* is therefore distinguishable. Notably, in its reply,
25  Verizon did not rebut this argument, which the CPUC raised in its opposition papers.

26  Although the other cases cited by Verizon to support invalidation of the true-up did
27  not involve arbitrated or mediated agreements, there was much more clear evidence or
28  reasoning in those cases to support invalidation of the unchallenged provisions once the

5

1 challenged provisions were invalidated. In *North Carolina v. Federal Energy Regulatory*
2 *Commission*, for example, the agency specifically stated that its "position is that the decision
3 in favor of Transco I compensation is not severable from the treatment of Transco II and III
4 in the December 30 order." 730 F.2d at 796. Thus, the court held that it could not uphold
5 the Transco I decision after invalidating the Transco II and III decisions because the agency's
6 own statements regarding non-severability were sufficient to create "substantial doubt." *Id.*
7 No such language is present here.

8 As another example, in *Federal Power Commission v. Idaho Power Company*, the
9 Supreme Court considered an agency's grant of a license to authorize construction with
10 certain conditions attached. The Court held that it would be improper to uphold the license
11 where the attached conditions were invalidated because it was unclear whether the agency
12 would have granted a license without conditions: "On remand the Commission might have
13 reissued the order without the contested conditions or it might have withheld its consent to
14 any license." *Fed. Power Comm'n*, 344 U.S. at 20. Similarly, in *Bell Atlantic Telephone*
15 *Companies v. Federal Communications Commission*, 24 F.3d 1441 (D.C. Cir. 1994), the
16 court invalidated a rule requiring the provision of physical co-location of certain facilities.
17 The rule also provided for virtual co-location where physical access was impracticable or
18 otherwise prohibited by law, but the court held that it could not require virtual co-location
19 because, "[c]ast as an exception to a general rule, virtual co-location cannot with any
20 coherence be thought to survive our abrogation of the rule itself." *Id.* at 1447. Thus, the
21 court found that "[o]n this record doubt [that the unchallenged provision would have been
22 adopted in the absence of the challenged provision] hardens into certainty." *Id.* Finally, in
23 *Addison*, the Supreme Court considered an administrative definition under the Fair Labor
24 Standards Act that included limitations based both on geography and number of employees.
25 The Court found the limitation based on the number of employees to be invalid and thereafter
26 invalidated the entire definition because the Court could "hardly assume that the
27 Administrator would have defined 'area of production' merely by deleting the employee
28 provision, had he known of its invalidity. It would be the sheerest guesswork to believe that

6

elimination of an important factor in the Administrator's equation would have left his equation unaffected even if he did not here insist upon its importance." *Addison*, 322 U.S. at 618-19.

In this case, the link between the interim rates and the true-up is not as clear as the connection between the challenged and unchallenged provisions in the above cases. Unlike the license in the *Federal Power Commission* case, which was issued subject to certain conditions that were subsequently invalidated, there is no clear indication here that the actual rates set by the CPUC in 2003 were a condition of ordering a true-up. In addition, the true-up ordered in 2003 was not an exception to a rule or a second-best alternative, as was the case in *Bell Atlantic*; instead, the true-up could reasonably be viewed as a separate rule that is capable of standing alone, without reference to the actual interim rates charged. In other words, the decision to order a true-up and the decision to set interim rates may be viewed as two independent acts, rather than as part of a single act, such as the promulgation of the definition at issue in *Addison*.

Given the CPUC's strong conclusion that the 1997 rates could not be permitted to continue in effect as of March 2003 because they were so outdated – a conclusion that Verizon does not challenge here – the Court cannot say that it would be the "sheerest guesswork" to believe that invalidation of the 2003 interim rates would not have altered the CPUC's decision to impose a true-up. *Addison*, 322 U.S. at 619. Verizon is mistaken when it argues that the CPUC adopted the true-up provision simply to bolster the validity of the interim rates and to attempt to shield such rates from judicial review. To the contrary, the imposition of a true-up of the (now invalidated) interim rates served to make the permanent rates effective as of March 2003, and it would not be unreasonable to conclude that the CPUC would have imposed a stand-alone true-up provision even if it did not simultaneously set revised interim rates. The idea that the CPUC's decision to impose a true-up did not depend on the actual rates in effect finds support from the CPUC's 2005 modification of the interim rates. In Decision 05-01-057, the CPUC revised the interim rates for certain elements based on new information available but nonetheless retained the true-up provision, thus

7

1 indicating that the imposition of a true-up did not depend on the actual rates set in the 2003
2 order.
3     On the other hand, just as the CPUC never explicitly conditioned the 2003 true-up on
4 the setting of interim rates, the 2003 rate order also contains no clear language that the
5 decision to impose a true-up and the decision to set interim rates were separate and therefore
6 severable.  Verizon does not dispute the CPUC's contention that the rate order clearly sets
7 forth the CPUC's position that the 1997 rates were extremely outdated and in need of
8 revision, and that therefore immediate relief was warranted.  However, Verizon argues that
9 this rationale would only support imposition of interim rates, and would not support simply
10 making the existing rates subject to true-up once permanent rates were set, because it is only
11 the imposition of interim rates that could provide the immediate relief the CPUC sought to
12 provide by its rate order.  Although making the permanent rates effective as of March 2003
13 would have ultimately provided relief to prospective entrants to the market, Verizon correctly
14 observes that such relief would not have been immediate.  Verizon's position also gains
15 credibility from the fact that the CPUC failed to impose a stand-alone true-up of the 1997
16 rates during the six-year period that those rates remained in effect; this failure indicates a
17 lack of clear intent to make the 1997 rates subject to true-up.
18     Verizon additionally notes that the CPUC declined to order a true-up of interim rates
19 in another case because a true-up mechanism "would create too much uncertainty for CLCs
20 [competitive local carriers] with respect to the rate levels they must pay, and would risk
21 stalling further development of the CLC resale market until permanent rates were
22 established."  CPUC Decision No. 97-08-059, 1997 Cal. PUC LEXIS 697, at *44 (Aug. 1,
23 1997).  Verizon then makes a persuasive logical argument that perhaps the CPUC imposed a
24 true-up in this case because it believed that permanent rates would be close to the 2003
25 interim rates; saying that the 1997 rates would be subject to true-up, when also explaining
26 that the 1997 rates are extremely outdated, would have resulted in much greater uncertainty
27 in terms of the rates that competing carriers would ultimately have to pay.
28

8

1  In light of all of the above, it is not a foregone conclusion that the CPUC would have
2  imposed a true-up in 2003 if it knew that the interim rates it attempted to set would be
3  declared invalid. Some uncertainty remains because the 2003 decision never states that the
4  true-up was designed to operate independently of the interim rates set in that decision.

5  However, the Court is reasonably certain that the CPUC would not have chosen to
6  leave the 1997 rates in place without a true-up because the CPUC clearly believed that the
7  1997 rates were outdated, and because the effect of the true-up provision was to make the
8  permanent rates effective as of the date of the 2003 rate order. Thus, while the Court cannot
9  say with absolute certainty that the CPUC would have imposed a true-up had it known that
10 the interim rates would be declared invalid, the Court also does not find that the uncertainty
11 in this case rises to the level of "substantial doubt" required to vacate the entire rate order,
12 including the true-up provision.

13 Alternatively, even if the true-up provision were not severable from the setting of
14 interim rates, Verizon has failed to persuade the Court that it would not be within the Court's
15 equitable powers to allow the CPUC to consider a true-up on remand.[1] The Court agrees
16 with Verizon that it might be an intrusion on the CPUC's administrative functions if the
17 Court were to order that a true-up actually be imposed, but the Court's order was intended
18 only as an indication that the CPUC was not barred from considering a true-up on remand.
19 The CPUC correctly interpreted the Court's order as leaving the CPUC "free to true-up the
20 rates, or not true-up the rates. The Court's [December 5, 2005] Order does not interfere in
21 any way with the Commission's exercise of authority over the matter." Opp'n at 8. Verizon
22 did not take a contrary view in its reply papers and, in fact, relied solely on its argument that
23 the true-up provision was not severable; the company failed to respond to the CPUC's
24 opposition to Verizon's alternative argument that this Court's December 5, 2005 order
25 somehow interfered with the CPUC's administrative functions.

---

[1] The parties agree that a formal remand in this case is unnecessary because the CPUC's 2006 permanent rate order clearly indicates that the CPUC believes a true-up is appropriate.

9

Verizon similarly failed to offer any written response to the CPUC's argument that this Court should exercise its equitable powers in favor of allowing a true-up because the true-up provision put all parties on notice that the permanent rates would take effect from the date of the 2003 order. Beginning in March 2003, entrants to the market expected to pay for access to unbundled network elements at whatever permanent rates were ultimately set by the CPUC, and the Court agrees that it would be inequitable for those parties to now be forced to pay a different rate than expected. Had prospective competing carriers not anticipated paying new permanent rates as of March 2003 and instead expected to pay the 1997 rates through whatever date the CPUC ultimately set permanent rates, they may have chosen not to enter the market.

Moreover, Verizon failed to give competing carriers or the CPUC adequate notice that it sought to vacate the true-up provision in addition to vacating the 2003 interim rates. Although Verizon correctly points to paragraph 51 of the complaint as containing a claim that Verizon is entitled "to have the Rate Order vacated," the prayer for relief in the complaint does not specifically ask for this relief and instead specifies only that the rates themselves should be vacated and that enforcement of those rates should be enjoined. Similarly, Verizon's proposed orders for both its original motion for summary judgment, filed on October 6, 2003, and its motion for summary judgment after remand, filed on September 12, 2005, did not ask that the true-up provision or the rate order in its entirety be vacated.

Verizon asserted at oral argument that it would be improper for this Court to allow the CPUC to consider a true-up on remand because to do so would implicitly allow the setting of retroactive rates. However, Verizon has failed to persuade the Court that the bar on retroactive ratemaking is implicated here. All interested parties have been on notice since the date of the 2003 rate order that the actual rates that would be charged to competing carriers were subject to adjustment, with the net effect being that carriers would pay the permanent rates beginning in 2003. As the D.C. Circuit has explained, "it is not that notice relieves the Commission of the bar on retroactive ratemaking, but that it 'changes what would be purely

retroactive ratemaking into a functionally prospective process by placing the relevant audience on notice at the outset that the rates being promulgated are provisional only and subject to later revision.'" *Natural Gas Clearinghouse v. Fed. Energy Regulatory Comm'n*, 965 F.2d 1066, 1075 (D.C. Cir. 1992) (citation omitted).  Here, even though Verizon correctly observes that the CPUC never made the 1997 rates subject to true-up or later adjustment, Verizon also cannot dispute that the 2003 rate order notified all parties that whatever permanent rates were ultimately set by the CPUC would be effective as of the date of the 2003 rate order.  Thus, regardless of the actual rates charged during the interim period, all parties were on notice that those rates were subject to revision as soon as permanent rates were set, and imposing a true-up on the reinstated 1997 rates would therefore appear to be "functionally prospective" rather than "purely retroactive."

Of course, as the Court noted in its March 29, 2006 Order Requesting Supplemental Briefing:

> Verizon may be able to challenge the CPUC's decision to make the reinstated 1997 rates subject to true-up, but that would need to be the subject of a subsequent lawsuit.  Whether the CPUC had the authority to order the 1997 rates to be subject to true-up in 2003 is not before the Court in this case.  Verizon only notes in a footnote in its motion for reconsideration that it does not concede that a stand-alone true-up provision – i.e., a true-up using existing rates, as opposed to at true-up based on newly imposed interim rates – would be a proper exercise of the CPUC's authority, but the company has never directly challenged the CPUC's authority to order such a provision.  Similarly, this case does not concern whether the CPUC has the authority to order a true-up of interim rates that is retroactive to an earlier date.

Mar. 29, 2006 Order at 3 n.2.  Thus, this Court does not now definitively decide whether the CPUC's imposition of a true-up in the permanent rate order is necessarily valid, as that issue is not before the Court at this time.  Instead, the Court holds only that Verizon has not met its burden of persuading the Court that vacating the 2003 interim rates automatically bars the CPUC from considering whether to apply a true-up on remand.

11

**CONCLUSION**

When the Court ordered that the reinstated 1997 rates "shall be subject to true-up once permanent UNE rates are established," the Court did not intend to require that such rates must actually be trued-up. Instead, as the CPUC properly interpreted, this language was intended only to indicate that the CPUC may, at its discretion, consider whether the reinstated 1997 should be subject to true-up. For the reasons discussed above, the Court rejects Verizon's assertion that the entire 2003 rate order, as opposed to only the challenged interim rates, must be vacated; there is no substantial doubt in the Court's mind that the CPUC would have adopted a true-up provision even if it had known that the interim rates it attempted to set would be declared invalid. Moreover, even if such doubt were present, Verizon has not persuaded the Court that it must bar the CPUC from considering a true-up on remand because it is not clear that the rule against retroactive ratemaking applies in this instance. Accordingly, Verizon's motion for reconsideration is DENIED. However, to clarify the Court's original intent, the disputed sentence in the December 5, 2005 order shall be modified to read that the 1997 rates "may," rather than "shall," be subject to true-up.

This ruling resolves the only outstanding dispute between the parties, and it therefore appears appropriate for the Clerk to close the file. Any party believing that issues remain in this case for the Court's resolution shall file a statement to that effect no later than seven calendar days from the date of this order. If no such statements are received, then the Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: 06/13/06

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

12